IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK RICHARD GRAHL,

                           Plaintiff,                              OPINION AND ORDER

     v.

                                                    21-cv-052-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                          Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Mark R. Grahl seeks judicial review of the Social Security Commissioner's final determination upholding a finding that he was not disabled during the period of time relevant to his application for disability benefits insurance. As context, plaintiff was found to be disabled as of March 2014 for purposes of his application for supplemental security income. This appeal only concerns his claim for disability insurance benefits from his alleged disability onset date of September 24, 2006, through his date last insured of December 31, 2010. This is Grahl's *third* appeal of this case, following two remands from this court, although the second was based on a joint motion by the parties. (AR 432-35, 801-02.)[1] In his third appeal to this court, plaintiff maintains that Administrative Law Judge ("ALJ") Michael Schaefer erred in two respects: (1) failing to give proper weight to the opinion of consultative examiner, Dr. Neil Johnson, and (2) performing an improper symptom analysis. For the reasons that follow, the court rejects both challenges and will affirm the decision on the Commissioner.

---

[1] The administrative record can be found at dkt. #15.

BACKGROUND

**A. Overview**

Plaintiff Mark Richard Grahl has at least a high school education, is able to communicate in English, and has past work experience as landscaper, which requires heavy exertion. Grahl has not engaged in substantial gainful activity from September 24, 2006, his alleged disability onset date, to December 21, 2010, his date last insured. As detailed above, Grahl was deemed disabled for purposes of supplemental security income as of March 2014. This appeal only concerns his application for disability insurance benefits for a roughly four-year period from September 2006 through December 2010.

With a birth date of September 25, 1956, Grahl was 54 years old on his date last insured, defining him as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. In his July 28, 2010, application for social security benefits, Grahl claimed disability based on "[b]ack problems causing difficulty walking and standing" and diabetes. (AR 159.)

**B. ALJ Decision**

ALJ Schraefer held a video hearing on October 30, 2019, at which Grahl appeared personally and through his counsel, the same counsel representing him in this appeal. On February 11, 2020, the ALJ issued an opinion finding that Grahl had not been under a disability within the meaning of the Social Security Act from his alleged disability onset date through his date last insured.

The ALJ first determined that Grahl had the following severe impairments: "mild degenerative disc disease of the lumbar spine with facet arthropathy and obesity." (AR

2

710.)  The ALJ also considered whether Grahl's type II diabetes mellitus constituted a severe impairment, but concluded it did not, in light of the record reflecting that "treatment only began in June 2017 and was fairly conservative with oral medications and no indication of the need for insulin."  (AR 710.)  The ALJ also noted that even at his consultative examination in December 2010, he was not showing complications or limitations from his diabetes diagnosis.  Plaintiff does not challenge this finding on appeal.

Next, the ALJ considered whether Grahl's impairments or combination of impairments met or medically equaled various Listings, including those relating to his back pain, obesity and diabetes, concluding that they did not.  (AR 710-11.)  Grahl does not challenge the ALJ's findings.

At step four, the ALJ further found that even with his impairments, during the relevant period from 2006 to 2010, Grahl had the residual functional capacity ("RFC") to perform light work, with the following additional exertional restrictions:  "can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and must avoid more than occasional exposure to workplace hazards (including moving machinery and unprotected heights)."  (AR 711.)

After setting forth the standard under SSR 16-3p, the ALJ described plaintiff's testimony that he stopped working due to back pain and his attempts to secure new employment were short-lived given his back pain.  Grahl also testified that he did not seek treatment for his back problems before 2010 due to a lack of insurance, although he did see a chiropractor once a month for about a year in the 1990s.  (AR 711.)  Grahl also revealed that he was previously addicted to pain medication and muscle relaxers, and could

not function on muscle relaxers due to excessive tiredness.  He also testified that he did not engage in physical therapy prior to 2010 and did not attempt injections until 2012, but those were unsuccessful regardless.  Grahl testified that he uses over-the-counter medications to control his pain, and that he was able to drive prior to his date last insured in 2010, denying any problems with short range driving up to 50 miles.  Grahl also testified that his back pain "is progressively worse."  He previously weighed close to 400 pounds.[2] Despite the weight loss, he reported that it was easier to walk in 2010 than currently.  As of the date of the hearing, he reported that he completes chores while sitting down, reported difficulty lifting, squatting, bending, reaching, walking, sitting, kneeling, climbing stairs and completing tasks, and on bad days, cannot get it out bed.

The ALJ acknowledged that "[t]here is very minimal objective evidence prior to the date last insurance," and further concluded that the evidence does not support an RFC with greater limitations than those described above.  (AR 712.)  Specifically, the ALJ reviewed a lumbar x-ray from December 1, 2010, performed as part of a consultative examination with Hongjing Tan, M.D., which revealed "mild degenerative disc disease" with "mild disc space height loss" at certain lumbar discs.  The exam with Dr. Tan revealed "lumbar tenderness and increased pain with extension, but had normal forward flexion"; "deep tendon reflexes were diminished in the lower extremities, but straight leg raising test was negative"; gait was described as "a little wobbly," but there was no indication that

---

[2] Plaintiff does not specifically challenge the ALJ's consideration of his obesity impairment, and for good reason, later in the opinion, the ALJ described in great detail the additional impact from obesity, concluding that it "would be expected to exacerbate his back pain and contribute to functional limitations."  (AR 717.)

Grahl required an ambulatory assistive device; Grahl denied any tingling, numbness or weakness and the exam confirmed "full strength and intact sensation of the lower extremities." (*Id.*) Overall, Tan did not find "any acute radiculopathy," and indicated that Grahl "seemed to be moving fairly well." (*Id.*) Based on this, the ALJ concluded that the RFC adequately accounted for Grahl's functional limitations.

As for other records, the ALJ reviewed records concerned an urgent care visit in June 2007 concerning diabetes and some appointments in June 2007, January through March 2008 with his primary care physicians, also primarily concerning diabetes management, and at times denying back pain complaints. In a February 21, 2008, appointment Grahl reported "waxing and waning lumbar back spasms and strains," with the onset in the "last couple of weeks." An appointment a month late on March 24, 2008, however, did not mention back issues. The ALJ also noted that he considered records post-dating the relevant period, including records from August and September 2011, during which he complained about lumbar back pain and was referred to physical therapy, which he attended six times before being released to home exercise program. Around this same time, he also reported to his primary care provider that his "low back was somewhat better on Naproxen anti-inflammatory." (AR 714.)

After disenrolling in a primary care case management system in April 2012, Grahl established care with a pain management clinic on June 20, 2012, reporting radicular back pain if he stood too long. The provider gave him a six-day sample course of Celebrex. Plaintiff later declined a prescription, reporting that Celebrex did not help and that he preferred no pain medication. The ALJ noted that plaintiff did not decline because of the

cost or lack of insurance.  The ALJ also acknowledged an MRI around this time that showed "multilevel disc degeneration" including "'severe' right L3-L4 foraminal stenosis," but concluded that this MRI does not support a finding of "'severe' degenerative disc disease" prior to his date last insured, since it was 18 months after the relevant period.  In July 2012, Grahl also tried injections and reported that they were effective and noted significant improvement, returning against in August 2012, and noting that the pain had returned. He also described a recurrence of pain in November 2012, resulting from climbing a ladder to hang plastic on windows.  He received samples of Lyrica and also began using hydrocodone.  Repeat injections were unfortunately ineffective.  A December 13, 2012, MRI showed "diffuse degenerative disc disease and facet changes," including "new left paracentral free fragment extending inferiorly."  (AR 715.)

Material to one of plaintiff's challenges, the ALJ noted that Grahl also had a consultative examination in August 2016, during which the examiner Neil Johnson, M.D., noted "no objective findings of radiculopathy," but described "tenderness in the back and some numbness in the left leg."  (AR 715.)  The straight leg raise test was negative, but Grahl was described as having a "slow antalgic gait" and "somewhat limited with flexion." (*Id.*)  A lumbar x-ray showed a "pattern similar to the prior x-ray from December 1, 2010, describing "mild disc space heigh loss through the lumbar spine" but also noting "moderate loss at L5-S1."  (*Id.*)  Facet arthropathy was now described as "moderate or prominent." (*Id.*)

The ALJ also noted that the district court and the Appeals Council required him the reevaluate "claimant's 'credibility,'" noting that given the age of the case "'credibility is an

issue here." (AR 715.)  The court first considered the "failure to treat" factor, noting the limited treatment record for the relevant period, but placed limited weight on it, and specifically concluding that this factor "results in the objective medical evidence of record being simply insufficient to support limitations rising to the disability standard or supporting limits that preclude competitive work prior to the date last insured," but that he did not consider this factor from a "believability" perspective.  (*Id.*)  The ALJ also noted that "there is no specific objective evidence showing that the claimant [made] any efforts to obtain treatment during the gaps in treatment, or being turned away from treatment due to an inability to pay." (*Id.*)  The ALJ acknowledged that a lack of insurance may have limited treatment options, but that the lack of evidence during this period remains. Specifically, the ALJ pointed to the lack of any records about his back pain from his alleged disability onset date of September 2006 until February 2008, when he first complained about back pain, including a July 2007 detailed clinical examination that revealed nothing to support a concern about back pain.  The ALJ concluded that the only evidence of back pain as a medically determinable impairment during the relevant period is the December 2010 consultative examination, which does not support greater limitations, for the reasons the ALJ provided above.  (AR 717.)

The ALJ also discussed the two consultative examinations and results of objective tests, rejecting Grahl's attorney's argument that "because the more recent consultative exam x-ray in 2016 had similarities to the exam x-ray in 2010, then the lumbar MRI from June 2012 must 'relate back' to prior to the time period and support great limitations." (AR 716.)  The ALJ explained that the MRI is a different diagnostic test than the x-ray and

the "December 2012 MRI specifically found new findings after only 6 months." (*Id.*)  The ALJ also noted differences between the 2010 and 2016 x-rays.  The ALJ also described the lack of evidence of any radicular signs or complaints during the relevant period, noting that these only developed in 2014, supporting his finding of disability for purposes of supplemental security income.

With respect to credibility, the ALJ considered activities of daily living, concluding that his reported activities are inconsistent with his reported limitations, specifically, noting that he reported helping cut wood in physical therapy records in September 2021 and that a September 2010 function report, described that he was independent and able to manage his own personal care, prepare simple meals, do light chores, go grocery shopping, although he described his days as mostly sedentary.  Still, the ALJ concluded that this record does not support a finding that he was mostly bed ridden and could only walk 1 to 2 minutes per day.  The ALJ also rejected Grahl's testimony that he was using a cane prior to 2010.

As for medical opinion testimony, the ALJ placed mixed weight on the opinions of the state agency medical consultants, crediting their finding that he could engage in light work with additional exertional limitations, but concluded that his obesity warranted additional postural and hazard limitations.  The ALJ placed only little weight on the opinion of the 2010 consultative examiner Dr. Tan because he did not opine on any functional limits, but stated that the state agency medical consultants were justified in relying on this exam and his findings due to the lack of other medical evidence.  As for Dr. Neil Johnson's opinions from the August 2016 consultative examination, the ALJ rejected

8

his finding that he was limited to sedentary work, among other functional limitations given that it was conducted 10 years after the alleged onset date and six years after the date last insured.  The ALJ also noted that Johnson's findings were in part based on objective tests -- namely the 2012 MRI and the 2016 lumbar x-ray that similarly post-date the date last insured and demonstrate an increase in the severity of his symptoms from 2010 to 2016.

With the assistance of the vocational expert, the ALJ concluded that Grahl could not perform his past relevant work in light of his RFC, but determined that there were jobs in sufficient numbers in the national economy that he could perform, including mail clerk, router and routing clerk.  As such, the ALJ concluded that Grahl was not under a disability from September 24, 2006, through December 31, 2010.  This appeal followed.


OPINION

The standard by which federal courts review a final decision by the Commissioner of Social Security is now well-settled:  findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Moreover, provided the Commissioner's findings under § 405(g) are supported by this kind of "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Finally, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner.  *Edwards v. Sullivan*, 985 F.2d

334, 336 (7th Cir. 1993). At the same time, courts must conduct a "critical review of the evidence," *id.*, ensuring that the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As described above, plaintiff raises two core challenges, which the court addresses each in turn. Neither argument has merit, which perhaps plaintiff recognized in opting not to file a reply brief in support of his appeal. Indeed, the extensive discussion in the ALJ's decision as detailed largely resolves plaintiff's challenges.

## I.  Treatment of 2016 Consultative Examination Opinion

Plaintiff contends that the ALJ erred in not placing greater weight on the opinion of the consultative examiner from 2016, Dr. Johnson, who opined that Grahl "cannot walk or stand for long periods due to pain," and was at least a basis for finding Grahl disabled as of 2014, awarding him supplemental security income. (Pl.'s Br. (dkt. #18) 8.) Plaintiff argues that there is no material difference in Grahl's condition between 2010 and 2016, and that if Dr. Tan in conducting the 2010 examination had completed an RFC questionnaire, he likely would have reached the same limitations as Dr. Johnson did in 2016.

The ALJ, however, explained in great detail his reasons for not placing weight on Dr. Johnson's findings in 2016. While the timing of his report vis-à-vis the relative period for Grahl's challenge to the denial of disability insurance benefits from September 2006 through December 2010 certainly formed a significant basis for his rejection of Johnson's opinion, the ALJ also explained that there were medical developments, starting in 2012, supporting a finding of radicular pain, noting key differences in objective tests, namely x-

10

rays, and developments in MRIs post-dating the relevant period.  At minimum, the ALJ provided a logical bridge between his determining to not place weight on Johnson's opinion about Grahl's exertional limitations in 2016 for purposes of determining Grahl's RFC during the relevant period.

Furthermore, the state agency medical consultants who reviewed Grahl's record, and specifically the 2010 consultative examination report by Dr. Tan, and relied on that report in determining Grahl's physical limitations.  As such, plaintiff's argument premised on the lack of an opinion by the consultative examiner in 2010 as to Grahl's physical limitations fails to recognize that other medical experts relied on the results of Tan's examination to opine on Grahl's limitations in 2010.  While the ALJ did not place weight on Dr. Tan's report because of his lack of opinion about physical limitations, he fully credited the state agency medical consultants' reliance on that report to inform their opinions.  Specifically, Drs. Chan and Khorshidi concluded that Grahl was capable of light work with some additional exertional limitations during the relevant period.  The ALJ reasonably relied on the state agency medical consultants' opinions to form his RFC.  *See Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("[B]ecause Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion[.]").

## II. Credibility Determination

Plaintiff also contends that the ALJ erred in performing an improper symptom analysis, assessing Grahl's "credibility," as required by prior regulations, and did not conduct the proper analysis under SSR 16-3p, which applies to all administrative proceedings after March 28, 2016, and focuses more on symptom assessment, rather than

character evaluation.  The ALJ's continued use of the term "credibility" is understandable, since, as he explains, the ALJ was instructed in remand orders from this court and the Appeals Council to reconsider earlier findings about "credibility."  Regardless, in assessing Grahl's "credibility," the ALJ conducted virtually the same analysis he would have under Rule 16-3p, considering, for example, the lack of treatment and his daily activities in examining whether Grahl's statements about the extent of his limitations is consistent with the medical record.  The court rejects plaintiff's challenge based solely on the ALJ's use of the term "credibility."

In his appeal, however, plaintiff also challenge the ALJ's treatment of his lack of insurance during at least some of the relevant period.  As described above, the ALJ both recognized that he reported a lack of insurance during at least some of the period from 2006 through 2010 and further considered whether this should factor into his placing weight on Grahl's lack of treatment during this relevant period.  Indeed, the ALJ's discussion of this issue is particularly thoughtful.  The ALJ ultimately concluded that he was not relying on the lack of treatment as a basis for finding Grahl not credible or otherwise assessing his behavior, but the lack of treatment nonetheless mattered for purposes of Grahl's burden of presenting evidence to support a finding of disability during this period of time.  In light of the dearth of evidence, the ALJ reasonably relied on the state agency medical consultants' review of the 2010 consultative examination, coupled with the review of medical appointment notes reflecting that Grahl sought no treatment for back pain, including with his PCP during annual appointments for a significant chunk of the relevant period, namely from September 2006 through February 2008.  As such, the

court sees no error with the ALJ placing some limited weight on Grahl's lack of treatment during the relevant period, while also recognizing that he lacked insurance coverage at least during part of this same period.  The court, therefore, rejects this challenge as well.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Mark Richard Grahl's application for disability insurance benefits is AFFIRMED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 27th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge